Electronically Filed
Intermediate Court of Appeals
CAAP-16-0000086
28-JUN-2019
09:01 AM

NO. CAAP-16-0000086

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
AARON KAEHU, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 14-1-1560)

SUMMARY DISPOSITION ORDER
(By: Fujise, Presiding Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Aaron N.K. Kaehu (Kaehu) appeals
from the February 3, 2016 Judgment of Conviction and Sentence
entered by the Circuit Court of the First Circuit (Circuit
Court).[1] After a jury trial, the Circuit Court convicted Kaehu
of Sexual Assault in the First Degree in violation of Hawaii
Revised Statutes (HRS) § 707-730(1)(a) (2014).[2] Kaehu was
sentenced to an indeterminate term of twenty years incarceration.

---

[1] The Honorable Dexter D. Del Rosario presided.

[2] HRS § 707-730(1)(a) provides, "(1) A person commits the offense of
sexual assault in the first degree if: (a) The person knowingly subjects
another person to an act of sexual penetration by strong compulsion[.]"

HRS § 707-700 (2014) provides, in relevant part:

"Strong compulsion" means the use of or attempt to use
one or more of the following to overcome a person:

(1)   A threat, express or implied, that places a person in
      fear of bodily injury to the individual or another
      person, or in fear that the person or another person
      will be kidnapped;

(2)   A dangerous instrument; or

(3)   Physical force.

On appeal, Kaehu contends:[3] (1) that he was denied his Hawaiʻi Rules of Penal Procedure (HRPP) Rule 48 right to a speedy trial; (2) the Circuit Court erred in failing to administer the pretrial colloquy as required by State v. Lewis, 94 Hawaiʻi 292, 12 P.3d 1233 (2000); (3) the State committed prosecutorial misconduct by invoking his race and that of the Complaining Witness (CW); (4) the Circuit Court erred in denying his Motion for a New Trial because it failed to instruct the jury (a) that consent can be express or implied, and/or (b) on the mistake of fact defense; and (5) he received ineffective assistance when counsel failed to (a) object to alleged prosecutorial misconduct, (b) request jury instructions as to consent and/or the mistake of fact defense, and (c) object to improper expert testimony.

After a careful review of the record, the briefs submitted by the parties, and the applicable law, and giving due consideration to the points raised and arguments made by the parties, we resolve Kaehu's appeal as follows and affirm.

1. Kaehu contends that the Circuit Court erred in denying his Motion to Dismiss pursuant to HRPP Rule 48(b). In support, Kaehu argues that the Motion for Continuance filed on November 5, 2014, by Kaehu's prior counsel should not be excluded from the Rule's six-month period because Kaehu did not personally join in the motion.

HRPP Rule 48(b)[4] mandates the dismissal of a charge unless trial is commenced within six months, construed as 180 days, from the time of arrest. HRPP Rule 48(b)(1); State v. Jackson, 81 Hawaiʻi 39, 50, 912 P.2d 71, 82 (1996). Pursuant to

---

[3] Kaehu's points on appeal have been reordered for clarity.

[4] HRPP Rule 48(b) provides, in relevant parts:

By court . . . the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within six months:

(1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made[.]

HRPP Rule 48(c),[5] certain periods of delay are excluded from the computation of the 180-day time limit. Id. Kaehu was initially arrested on September 26, 2014, and was not released; he was subsequently rearrested at Oahu Community Correctional Center on the strength of the Grand Jury's arrest warrant, therefore, Kaehu's arrest triggered the 180-day time limit. See HRPP Rule 48(b)(1); State v. Cenido, 89 Hawai'i 331, 334, 973 P.2d 112, 115 (App. 1999) (period between arrest and indictment included where both for the same charge). The trial began on August 31, 2015. The interval between arrest and trial amounts to 339 days, or 159 days over the 180-day time limit.

The only excludable period identified by the Circuit Court was based on Kaehu's motion for a continuance of the then-existing trial date of December 8, 2014. On November 5, 2014, Kaehu's counsel moved for a continuance on the basis that he would be on family leave until December 22, 2014, and that he needed unspecified additional time to investigate the existence of defense witnesses and to prepare a defense. At the November 19, 2014 hearing on the motion, the State requested, and the Circuit Court set, a firm trial date. The court set trial for July 13, 2015. Under HRPP Rule 48(d)(1), the filing date of a defendant's motion to continue starts the excludable time period.[6] Fourteen days elapsed between November 5, 2014, and

---

[5]     HRPP Rule 48(c) provides, in relevant part:

**Excluded Periods.** The following periods shall be excluded in computing the time for trial commencement:

(1) periods that delay the commencement of trial and are caused by collateral or other proceedings concerning the defendant, including but not limited to penal irresponsibility examinations and periods during which the defendant is incompetent to stand trial, pretrial motions, interlocutory appeals and trials of other charges;

.  .  .  .

(3) periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel[.]"

[6]     HRPP Rule 48(d) provides, in relevant part:

**Per se excludable and includable periods of time for purposes of subsection (c)(1) of this rule.**

(continued...)

3

November 19, 2014, when the motion was decided, and was properly excluded under HRPP Rule 48(d)(1). Trial itself was delayed for 217 days--from December 8, 2014, to July 13, 2015--based on Kaehu's motion to continue and was properly excludable under Rule 48(c)(3) for a total of 231 days of excludable time. As exclusion of 231 days from the total of 339 days would bring the time for HRPP Rule 48 purposes to less than 180 days, this exclusion alone would support the Circuit Court's denial of Kaehu's motion.

Kaehu submits that this time should not be excluded because he did not personally waive his speedy trial rights. HRPP Rule 48(c)(3) provides for exclusion of "periods that delay the commencement of trial and are caused by a continuance granted at the request or with the consent of the defendant or defendant's counsel[.]" The Circuit Court relied on the disjunctive "or" to determine that the "defendant's consent is not necessary if defense counsel feels he needs a continuance." The Circuit Court was not wrong.[7] State v. Diaz, 100 Hawai'i 210, 223-24, 58 P.3d 1257, 1270-71 (2002); State v. Schoenlein, 125 Hawai'i 246, 257 P.3d 1223, Nos. 29269 and 29270, 2011 WL 2611286, at *2 (App. 2011) (SDO) ("no requirement that the defendant himself must agree to the continuance").

2. Kaehu asserts that the Circuit Court violated his constitutional rights by failing to conduct a prior-to-trial advisory advising him of his right to testify and his right to

---

[6](...continued)
> (1) For purposes of subsection (c)(1) of this rule, the period of time, from the filing through the prompt disposition of the following motions filed by a defendant, shall be deemed to be periods of delay resulting from collateral or other proceedings concerning the defendant: motions . . . to continue trial[.]

Any delay resulting from any pretrial motion concerning the defendant shall be excluded from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion. State v. Samonte, 83 Hawai'i 507, 514, 928 P.2d 1, 8 (1996).

[7] Kaehu further argues that the continuance given to his trial counsel was unreasonable and maintains that the continuance should have been no more than sixty days. However, Kaehu has cited to no authority for this 60-day time limit and provides no factual basis in the record outside of his bare speculation, for his argument that the full continuance was unnecessary. We therefore reject this argument.

remain silent. Kaehu is correct that there is no record that the Circuit Court conducted a pretrial colloquy and therefore the court erred. State v. Lewis, 94 Hawaiʻi 292, 12 P.3d 1233 (2000). Under State v. Torres, 144 Hawaiʻi 282, 291 n.10, 439 P.3d 234, 243 n.10 (2019),

> a court's failure to properly deliver the pretrial advisement is subject to the actual prejudice standard so long as the trial court subsequently engages the defendant in the ultimate [Tachibana v. State, 79 Hawaiʻi 226, 237, 900 P.2d 1293, 1304 (1995)] colloquy. When the ultimate colloquy is not given, however, a Lewis violation is evaluated under the harmless beyond a reasonable double standard.

As Kaehu did not receive a Tachibana colloquy, we look to see whether the failure to give the Lewis advisory was harmless beyond a reasonable doubt.

We conclude that it was. The State's evidence was very strong. It consisted of the CW's testimony of the events, including description of Kaehu's death threat with a rock and forceful sexual intercourse. The parties stipulated to DNA evidence collected not only from a vaginal swab from the CW but from Kaehu's shirt left at the scene. A police officer testified to speaking with the CW near the scene, and that the latter was wearing a skirt with fresh blood stains. Medical testimony established abrasions and contusions to the CW's back and multiple lacerations to her external genitalia, the latter associated with "forceful stretching of that tissue." As in Torres, Kaehu was the sole defense witness. Kaehu's defense was consent to the sexual assault. Had Kaehu not testified, there would have been no evidence of his defense of consent. Thus, there was not a reasonable possibility that the failure to advise him of the right not to testify contributed to his conviction and was therefore harmless beyond a reasonable doubt. Torres, 144 Hawaiʻi at 291, 439 P.3d at 243.

3. Kaehu maintains the prosecutor committed egregious misconduct by inappropriately appealing to race in her opening statement.[8] Specifically, the Deputy Prosecutor made numerous

---

[8] Kaehu also argues, without substantiation, that the prosecutor committed misconduct by exercising a peremptory challenge against a woman named Haunani Kauahai as an attempt to remove "(native) Hawaiians" from the

(continued...)

references to Kaehu as a "local male" and the CW as a "female visitor from Canada" in her opening statement. The alleged misconduct was not objected to at trial and is therefore subject to review for plain error. State v. Wakisaka, 102 Hawai'i 504, 513, 78 P.3d 317, 326 (2003); see also State v. Fox, 70 Haw. 46, 56, 760 P.2d 670, 676 (1988) ("[T]he decision to take notice of plain error must turn on the facts of the particular case to correct errors that 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'").

When reviewing for prosecutorial misconduct, appellate courts

> review[] under the harmless beyond a reasonable doubt standard, which requires an examination of the record and a determination of whether there is a reasonable possibility that the error complained of might have contributed to the conviction. Factors to consider are: (1) the nature of the conduct; (2) the promptness of a curative instruction; and (3) the strength or weakness of the evidence against the defendant. Misconduct of a prosecutor may provide grounds for a new trial if there is a reasonable possibility that the misconduct complained of might have contributed to the conviction.

State v. Rogan, 91 Hawai'i 405, 412, 984 P.2d 1231, 1238 (1999) (citations omitted, format altered).

As to the nature of the conduct, the State, in its opening statement, referred to Kaehu as a "local male" twelve times, and referred to CW as a "female visitor from Canada" twelve times and as a "female visitor" an additional eighteen times. Kaehu argues that "local male" and "female visitor from Canada" are code words for "Hawaiian" and "Caucasian," respectively.[9] It is uncontested that the State's

---

[8](...continued)
jury. Kaehu admits that Ms. Kauahai's racial extraction is unknown and no objection to her exclusion was preserved. Kaehu does not state whether this is her birth name or whether she is married. Kaehu also provides no facts regarding the ethnic composition of the jury venir. Without any facts as to the race of the individual or the pool of jurors of which she was a part, this argument is bare speculation and will not be addressed. Kakinami v. Kakinami, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing Bitney v. Honolulu Police Dep't, 96 Hawai'i 243, 251, 30 P.3d 257, 265 (2001); see also In re Guardianship of Carlsmith, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that the appellate court may "disregard a particular contention if the appellant makes no discernible argument in support of that position") (internal quotation marks and brackets omitted))).

[9] Defense counsel relies on an unspecified Wikipedia page to support what he argues is "what is only common knowledge that the population of Canada
(continued...)

characterizations were true. CW testified that she had arrived in Honolulu the day before for her first visit and that she was from Canada. Kaehu testified that he was "born and raised" in Waimānalo.

Prosecutorial misconduct is found in arguments that "foster jury bias through racial stereotypes and group predilections, thereby promoting an atmosphere that is inimical to the consideration of the evidence adduced at trial." Rogan, 91 Hawai'i at 414, 984 P.2d at 1240. The State maintains the references were not explicit references to race and were used for the objectively legitimate purpose of illustrating the advantage of geographic knowledge Kaehu held over the CW. CW testified that she came to Waimānalo to see its beach and the Magnum, P.I. house and Kaehu offered to show her around. Although Kaehu maintained it was the CW that approached him, he obtained a bike for her and agreed to show her the house and the beach. A police officer testified that the pathway that led to the scene of the assault was not obvious and "you don't see tourists down there." We agree that, taken in context, the State's use of "local" and "Canadian" and "tourist" were not appeals to racial stereotypes or group predilections, but to make the point that Kaehu was familiar with the area and the CW was not which in turn was relevant to the issue of consent.

No cautionary instruction was given because Kaehu did not object to the State's argument.

The State's evidence was strong. The State presented, in addition to the CW's testimony that Kaehu threatened her with a rock and forcibly committed sexual penetration, the corroborating physical evidence, most notably Kaehu's shirt found at the scene, from which his and the CW's DNA material was collected, and medical testimony of the CW's genital lacerations was presented. The only issue at trial was whether the sexual act was with the CW's consent. On that point, Kaehu did not

---

[9](...continued)
88.8 per cent [sic] Caucasian." It is unclear to what Kaehu refers and, in any event, regardless of the accuracy of his number, Kaehu has failed to provide support for the notion that the ethnic breakdown of the Canadian population is common knowledge, such that one could reasonably infer use of the descriptor "Canadian" could be taken as "code" for Caucasian.

affirmatively testify that the CW consented or that he believed she consented to having sexual intercourse with him in the face of verified physical injuries suffered by the CW.

On these facts, we conclude that Kaehu has failed to establish plain error arising from the prosecutor's opening statement.

4.    Kaehu contends that the Circuit Court erred in denying his Motion for a New Trial and/or plainly erred in failing *sua sponte* to instruct the jury (a) that consent may be express or implied, and/or (b) on the mistake of fact defense. Specifically, Kaehu asks us to find plain error in the Circuit Court's failure to so instruct.

Under State v. Haanio, "the trial court has the ultimate responsibility and duty properly to instruct the jury." 94 Hawai'i 405, 414, 16 P.3d 246, 255 (2001) (emphasis omitted) (overruled on other grounds by State v. Flores, 131 Hawai'i 43, 314 P.3d 120 (2013)). In State v. Taylor, the supreme court clarified that the appellate courts must engage in a two-step review in analyzing instructional error, first for plain error and then for harmless error. State v. Taylor, 130 Hawai'i 196, 201-08, 307 P.3d 1142, 1147-54 (2013) (discussing HRS § 701-115 (1993); HRS § 702-218 (1993)).

a.    Kaehu asserts the Circuit Court erred in failing to instruct the jury that consent may be express or implied. Kaehu was charged with a single count of Sexual Assault in the First Degree, which requires, in the context of this case, proof that he knowingly committed sexual penetration of the CW by strong compulsion. HRS § 707-730(1)(a). Strong compulsion is defined as the use of an implied or express threat of bodily injury to the CW, a dangerous instrument, or physical force. HRS § 707-700. Consent is a defense if it negatives an element of the offense. HRS § 702-233 (2014). However, consent is ineffective if it is induced by force, duress, or deception. HRS § 702-235(4) (2014). Finally, the State has the burden to prove beyond a reasonable doubt that the CW did not consent to the alleged conduct or result thereof. HRS §§ 701-114 and 702-205 (2014). The jury was instructed on these concepts. But cf.

8

<u>State v. Jones</u>, No. CAAP-16-0000096 (App. Jun. 27, 2019) (mem) (vacating conviction where jury was not instructed on the aforementioned concepts, including the definition of consent, the possible application of implied consent, or that consent may be ineffective if induced by force). No lesser included offense instructions were given.

Thus, the jury was correctly instructed on the law, which renders consent ineffective if it is induced by force, duress, or deception. If the jury believed CW's testimony, any consent, express or implied, would have not been effective as a defense, because it would have been a product of the threats and/or force used by Kaehu during the assault. If the jury did not believe CW, but instead believed Kaehu's testimony that he did not threaten or restrain CW, they were instructed not to find him guilty because they would have found he did not use threats, a dangerous instrument, or other physical force which was a necessary element of the offense. Under the law as applicable to this case, the success of Kaehu's consent defense did not turn on whether the jury understood that consent could be implied, but whether they found he used threats or force.

Kaehu has failed to establish the instructions were an incorrect statement of the law by failing to tell the jury that consent could be express or implied.

b. For similar reasons, we reject Kaehu's claim the Circuit Court erred in failing to instruct the jury *sua sponte* on the mistake-of-fact defense, <u>i.e.</u>, that the jury should have been instructed pursuant to HRS § 702-218 (2014)[10] that reliance on a mistaken belief of fact can serve to negative the state of mind

---

[10]  HRS § 702-218 provides:

**Ignorance or mistake as a defense.** In any prosecution for an offense, it is a defense that the accused engaged in the prohibited conduct under ignorance or mistake of fact if:

(1)  The ignorance or mistake negatives the state of mind required to establish an element of the offense; or

(2)  The law defining the offense or a law related thereto provides that the state of mind established by such ignorance or mistake constitutes a defense.

required to commit the offense even absent a request from trial counsel. The State's case was based on evidence of sex assault by strong compulsion. Kaehu's testimony was that he did not use force or restraint. If the jury believed his version of the events, they would have acquitted him because they would have found strong compulsion was not proven. The failure to give a mistake-of-fact instruction would have been, at worst, harmless error.

5. Kaehu asserts he received ineffective assistance of counsel because trial counsel: (1) failed to object to the alleged prosecutorial misconduct; (2) failed to request jury instructions (a) that consent can be express or implied, and/or (b) on the mistake of fact defense; and (3) failed to object to the improper opinion testimony proffered by the State's expert. Because we have concluded there was no prosecutorial misconduct and it was not reversible error to omit the consent and mistake-of-fact instructions, we address the failure to object to expert testimony only.

On appeal, allegations of ineffective assistance of counsel are reviewed for: "(1) [whether] there were specific errors or omissions reflecting the counsel's lack of skill, judgment, or diligence; and (2) [whether] such errors or omissions resulted in either the withdrawal or substantial impairment of a potentially meritorious defense." See, e.g., Wakisaka, 102 Hawai'i at 513-14, 78 P.3d at 326-27.

Kaehu asserts trial counsel failed to object to improper expert testimony. Kaehu alleges the State's medical expert improperly testified: (1) beyond the scope of his expertise; and (2) as to the ultimate fact to be decided by the jury. Both relate to Dr. Lee's use of the word "forceful" in his testimony. When asked how a woman would sustain a laceration to the genital area, Dr. Lee answered, "[l]acerations are -- are tear injuries. Tears in the area of the external genitalia are commonly associated with sudden or forceful stretching of that tissue."

First, Kaehu claims it was "a matter of physics and mechanics" whether an injury is cause by force and thus beyond

10

the scope of Dr. Lee's medical expertise. Medical experts are permitted to define terms as used in their field. See, e.g., State v. Uyesugi, 100 Hawai'i 442, 449-53, 60 P.3d 843, 853-54 (2002) (holding appropriate that defense and prosecution medical experts defined the term "appreciate" differently); State v. Nuetzel, 61 Haw. 531, 545, 606 P.2d 920, 929 (1980) (expert allowed to define medical term "mentally ill") (abrogated on other grounds by Uyesugi, 100 Hawai'i 442, 60 P.3d 843); Kekua v. Kaiser Found. Hosp., 61 Haw. 208, 221 n.6, 601 P.2d 364, 373 n.6 (1979) (medical expert defined "dyspnea" as gasping for breath). Dorland's Illustrated Medical Dictionary (Dorland's) defines a "laceration" as "the act of tearing" or "a torn ragged, mangled wound." *Laceration,* Dorland's Illustrated Medical Dictionary (32nd ed. 2012). Dorland's also defines "tear" as "to pull apart or in pieces by force" or "to wound or injure, especially by ripping apart or rendering; lacerate." *Tear,* Dorland's Illustrated Medical Dictionary (32nd ed. 2012). As such, Dr. Lee's use of the word "force" was in the course of defining medical terminology and therefore was within the scope of his expertise. An objection to Dr. Lee's testimony on this basis would have been overruled, and, therefore, failure to object was not error.

Second, Kaehu claims Dr. Lee's use of the word "forceful" constituted testimony on the ultimate issue of fact, establishing the element of strong compulsion defined as "use of physical force."[11] In State v. Batangan, the supreme court recognized that Hawaii Rules of Evidence (HRE) Rule 704[12] permits opinion or inference testimony that "embrace[] the ultimate issue to be decided by the trier of fact"; however, admitted opinions cannot "merely tell the jury what result to reach." 71 Haw. 552, 559, 799 P.2d 48, 52 (1990) (brackets omitted) (citing HRE Rule 704; Commentary to HRE Rule 704). In Batangan, a child

---

[11] Strong compulsion can be proved by evidence of a threat of bodily injury, use of a dangerous instrument, or physical force. See n.2, supra. The jury was so instructed.

[12] HRE Rule 704 provides, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

11

sexual assault case, the State's expert implied the complainant was truthful and therefore the sexual abuse had occurred.  Id. at 555, 799 P.2d at 50.  Here, the ultimate issue of fact to be decided was whether CW consented to sex with Kaehu.  Dr. Lee's testimony regarded the physical cause of lacerations to the CW's genitalia and did not opine on the credibility of the CW and did not state that force did cause the tears, but rather "are commonly associated with sudden or forceful stretching of that tissue."

Moreover, the cause of the lacerations the CW suffered was not the only evidence of strong compulsion.  The CW testified that Kaehu verbally threatened to "smash [her] head in and kill [her.]"  The CW testified that Kaehu actually picked up a rock and held it near her head, which the jury was instructed could constitute a dangerous instrument.  Therefore, Dr. Lee's testimony was cumulative in establishing strong compulsion.

As an objection to Dr. Lee's testimony would have been overruled, failure to object was not error.

Under Wakisaka, Kaehu identifies no specific errors or omissions reflecting the counsel's lack of skill, judgment, or diligence, and therefore did not receive ineffective assistance of counsel.  102 Hawaiʻi at 514, 78 P.3d at 327.

For the foregoing reasons, the February 3, 2016 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawaiʻi, June 28, 2019.

On the briefs:

Emmanuel G. Guerrero,
for Defendant-Appellant.

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge